BROWN, Circuit Judge,
concurring:
I agree that “when Bevington interpreted th[e] conversations on the basis of his *985 listening to ‘all of the calls,’ the jury had no way of verifying his inferences or of independently reaching its own interpretations.” Op. 983. But as I see it, the problems do not end there. By testifying on numerous occasions on the meaning of ordinary — albeit cryptic — recorded language, Agent Bevington trespassed into the jury’s domain.
Let’s start with the sort of opinion testimony a witness may give in interpreting wiretapped conversations. An expert witness may interpret for a jury coded language generally used in drug conspiracies, much as a lay witness with personal knowledge of a particular drug conspiracy may testify on the meaning of coded language specific to that conspiracy. See United States v. Wilson, 605 F.3d 985, 1025-26 (D.C.Cir.2010); United States v. Rollins, 544 F.3d 820, 830-32 (7th Cir.2008). Yet neither category encompasses Agent Bev-ington’s testimony on the wiretapped conversations in this case. Under the guise of lay opinion testimony, he explained the inferences the jury should draw from recorded conversations involving ordinary language. At that point, his testimony transformed from evidence into argument. See United States v. Peoples, 250 F.3d 630, 640-42 (8th Cir.2001).
Take, for example, “Activation 100,” a conversation between Lonnell Glover and Coolridge Bell, who was also indicted as a coconspirator:
Glover: Now I pay my man 5,000 for every time a 10 of those UI [unintelligible] come in?
Bell: Huh?
Glover: Every time 10 come in, I give him 5.
Bell: UI.
Glover: Naw to receive it.
Bell: Oh UI.
Glover: I pays everybody well man. That’s what I’m saying there ain’t no whole lot of room in this shit for me right.
Glover: UI I give him 5, okay so he’ll wind up making $25,000.00, just receiving and picking the shit up for me.
Bell: UI.
Glover: Alright and I’ll take it and put it other places. I pay the peoples fucking bills you know what I’m saying?
From this barely coherent exchange, Agent Bevington somehow divined that “Mr. Glover is talking to Coolridge Bell about paying Mr. Hampton for receiving shipments of PCP .... $5,000 every time ten gallons were received.”
Consider also “Activation 5982,” referenced in the opinion: “So a boy come pick me up, then I had to ride around with him, when I see you I’m gonna tell you everything been going on, I just man you talking about a hectic motherfucking day.” Somehow, when passed through Agent Bevington’s interpretive prism, this jumble of vagaries becomes crystal clear: Glover was “talking about Mr. Suggs coming to pick him up after he dropped his truck off in the shop, and he is going to tell Mr. Hampton what happened with the search warrant and everything related to that.” That is not to say a juror could not have reached the same conclusions, but rather that such conclusions are fit only for a juror to reach.
As the panel recognizes, the reasoning in United States v. Grinage, 390 F.3d 746 (2d Cir.2004), readily applies to the facts of this case. Op. 982-83. I fear, however, that based on our discussion, a casual reader may infer only one guiding principle from Grinage. In actuality, two may be distilled, and both apply here: First, the jury must not be deprived of the opportunity to independently evaluate the foundation for such testimony based on facts in evidence. See 390 F.3d at 750 (“Whether labeled as an expert or not, the *986 risk that [the witness] was testifying based upon information not before the jury, including hearsay, or at the least, that the jury would think he had knowledge beyond what was before them, is clear.”)- Second, even if the testimony draws its inferences based only on facts in evidence, it may nonetheless impermissibly supplant the jury’s factfinding role. A lay opinion witness may tell jurors “what was in the evidence,” but not “tell them what inferences to draw from it,” for that responsibility is up to the jury and the jury alone. Id. As the panel explained, “ ‘rather than being helpful to the jury,’ ” such testimony “ ‘usurpfs] the jury’s function.’ ” Op. 983 (quoting Grinage, 390 F.3d at 751).
Admitting Agent Bevington’s testimony under Rule 701 was error. But just to be clear: had the government in this case placed into evidence the literally thousands of recorded conversations, the conclusion would be the same. Lambasting the jury with reams of additional evidence while still according magisterial status to Agent Bevington’s inferences would do nothing to fix his intrusion on the factfinder’s function.